Courthouse. The case we have on the calendar for today is Chesapeake Appalachia v. Scout Petroleum, appellate number 15-1275. Mr. Prater, we'll hear you. Thank you, Your Honors. I'm Robert Prater, and I represent the Scout Appalachians in this case. I would like to reserve five minutes for Mr. Prater's question, which is a narrow one, and that is, does the arbitration clause in the form gas lease that Chesapeake prepared clearly provide that the arbitrators have jurisdiction to make the initial determination if the agreement provides for class arbitration? Clearly and unmistakably. That is the difference between this and Opelinski is that Opelinski decided the issue that was left open by the Supreme Court and has not yet been decided, and that is, is class arbitration a question of arbitrability? And is it a question of arbitrability that the court or the arbitrators decide depending upon the language of the contract? So that Opelinski, the holding of Opelinski, at least in the Third Circuit, is that class arbitration is a question of arbitrability. We're not contesting that, but the issue is, is whether the arbitrators under the contract decide that question initially, or does the court? And what Opelinski says is that if you are, like we are, intending that the arbitrators decide that issue, we have to show that it's clear and let's assume we have a hypothetical party A and B, and they want to have disputes, bilateral disputes, under their agreement left to the arbitrator to decide questions of arbitrability of bilateral disputes, but they do not contemplate class arbitrability being delegated to the arbitrator in the first instance. Why wouldn't it be reasonable for them to draft their contract to provide that in the event of a dispute between party A and party B concerning this contract, or a breach of this contract, that such dispute shall be sent to arbitration pursuant to the rules of the American Arbitration Association? Those rules do provide certain procedures where parties who want bilateral arbitration might invoke them. So why, for those hypothetical parties who want their bilateral dispute sent to the arbitrator, but are not contemplating class arbitrability being delegated as a question for the arbitrator in the first instance, why wouldn't it be reasonable for them to draft a contract with those terms? Well, I think I agree with your honor. The whole question is what does the contract say? Well, how about that contract in those terms as I set them out? Well, I think again, if it said any bilateral disagreement, that's not what this contract says. This contract says that all disputes and arbitration, which the district court did not do, is construe the meaning of that clause and the meaning of the AAA rules under Pennsylvania state law. So is it your position then that the clear and unmistakable agreement between the parties to send this decision to an arbitrator is by virtue of the fact that the That's correct, and how could that be correct possibly? Because your burden, and it is a burden, is that the parties agreed to class arbitration. We don't look at the AAA rules to see whether you have agreed to class arbitration. We look at the lease agreement to see whether or not the lease agreement contemplated class action arbitration. The lease agreement referred to the AAA rules, but in order to see whether the parties agreed to anything, you see what they agreed to by the lease agreement. The lease agreement is silent on class action arbitration. You are therefore in a situation where you must show and your burden is ominous. It must be clearly shown that both parties agreed that there could be class action arbitration. How have you done that in this case? We've done that, Your Honor, because the issue here is simply who decides. It's not the question of did they agree to class arbitration. That is the issue to be decided by either the arbitrator or the court. The issue before Judge Brand was count one of the complaint and a motion for partial summary judgment on who decides. Chesapeake framed their complaint that way, and the only issue before Judge Brand was who decides, not whether the parties had agreed to class arbitration. But is it your position that the mere reference to arbitration under the AAA rules reflects the party's intention to delegate the question of class arbitrability to the arbitrator unless the contract specifies that it's a bilateral agreement to be delegated or it carves out class arbitrability? Well, there could have been an express waiver that is true. What we are saying is that the rules are not just referred to. They are part of the contract. The rules of the AAA, both by state law and Rule 1 of the commercial rules, which there's no dispute, are part of this contract. So from your point of view, if the language of the rule were typed in the lease as opposed to being incorporated, there should be no difference? There is no difference. I mean, it is part of the lease because under Stolt, the question is, and this also goes back to Judge Cowen's question, under the Stolt case and under the Sutter decision of the Third Circuit, what the court is looking for is a contractual basis for the understanding. The words class arbitration do not have to appear in the contract. Here they do, in fact, appear through the incorporation of the AAA rules for the purposes of who decides. But if you can also contemplate a contract where the parties are only contemplating bilateral arbitration, being delegated for the question of arbitrability to the arbitrator in the first instance, and they want that bilateral arbitration to be subject to the AAA rules, then don't we have, at a minimum, ambiguity? That is, let's accept that your interpretation, incorporation of the AAA rules, is a reasonable one. Isn't there also a reasonable reading of this contract that all that it's referencing and all that is being delegated as a question of arbitrability for an arbitrator is the bilateral arbitration? I don't agree with that. I don't agree with the hypo or that conclusion. The reason being, again, the question is the mechanism by which something is going to be decided. Whether you call it a dispute, we have a dispute. We have a dispute with Chesapeake over both the royalty provision and we have a dispute whether we can have a class action. The rules that they incorporated, the rules that they selected said the question will be initially decided by the arbitrators and then may be reviewed by the court. The court is not being dealt out of this. It's not an unfair situation. The AAA adopted these rules after Basel in order to provide a mechanism. And I will also say, as I think our brief makes clear, that Commercial Rule 7 and Commercial Rule 8, which clearly are what Your Honor, I think, is referring to as bilateral rules, that says questions of arbitrability will be decided by the arbitrators. That's what the rules they incorporated in the lease say. And nine circuit courts have upheld that. What language would you say needs to be set forth in an arbitration clause for parties who are contemplating only the bilateral dispute being delegated to the arbitrator for the question of arbitrability? I think they would have to say under the current rules of the AAA and the rules that were in effect at the time of this lease, which is after the supplementary rules were adopted, that the only rules that apply are the commercial rules without the supplementary rules and that, and I would also say, would have to exclude Rule 7 and Rule 8 of the commercial rules. That's not what they intended to do. Clearly, they intended to incorporate all the rules and the issue here as to who decides is governed by those rules. Well, that was decided in Opelitzky, though. Given the language of Commercial Rule 1A and your own theory of the case of incorporation, how can we conclude that the parties in Opelitzky did not agree to the rules that existed at the time of the arbitration demand was filed? In other words, the rules that applied, applied at the time of the agreement to arbitrate. And those rules were also in effect at the time Opelitzky was decided. But I think, was the supplemental rules were in 2003, right? That's when they were adopted. Okay. Was the Opelitzky clause was in effect before 2003? The Opelitzky agreements predated supplementary rules. And the other point I would make, Your Honor, that distinguishes our case completely from Opelitzky's, the Third Circuit did not consider these arguments. That's clear. They did not consider the argument as to the implication of the rules. But their opinion is to the effect that the rules in effect at the time of the arbitration and supplemental rules were in effect at the time of the arbitration in Opelitzky. That's correct. But the Third Circuit didn't look at that. That was not an issue that they decided. Or was it presented? The holding of the case, the holding of the case was that the rules in effect at the time of the agreement to arbitration prevail, at the time of the arbitration prevail. And the supplemental rules were in effect at that time, even though they weren't presented to the court. That's not, as far as I'm aware, Your Honor, that's not in the Opelitzky opinion at all. They don't discuss that issue at all. It's not in the opinion. And I'll also point out that the litigation posture of the parties in Opelitzky was totally different than here. The Opelitzky case started before Judge Hochberg as a federal case in which the parties, the plaintiffs were saying that class arbitration was prohibited. That was their position before Judge Hochberg. She decided, no, it's silent and sent it back to the arbitrator. But the parties then accepted her finding of silence. That was never appealed. The Opelitzky decision itself said there had to be express contractual language unambiguously delegating the question of arbitratability to the arbitrator. And you don't have that express contractual language here. Well, I would beg to differ in two respects. Under the precedential decision of this circuit in Sutter, which talks about what is silence. In order to avoid silence, you do not have to have the words class action or class arbitration in the agreement. Was that a bilateral or what was that, a bilateral? Yes, that was a dispute between a doctor and a hospital. Your brief, you had six pages full of citations and arguments. The cases dealing with bilateral litigation and arbitration had nothing to do with this case. Well, the reason I would say they do have something to do with the case is that all of those citations go to the question of who decides questions of arbitrability. This is a question of arbitrability. There's no doubt about it. But this is not some super question of arbitrability. In other words, if class arbitration is a question of arbitrability, then all right, it's a question of arbitrability. But nine circuit courts have held that the adoption of the commercial rules is an express intention to have the question of arbitrability decided by the arbitrators. That is, you're dealing with bilateral arbitration in almost every single case, and that's what your brief was full of, bilateral arbitration. The Sixth Circuit is the only court, the Court of Appeals, that has dealt with the question which is before us right now head-on. And they decide the case against you, saying the lease agreement, the agreement to arbitrate, not the referral to the AAA rules, which last time I looked at 50-some-odd pages, it was a book, it was bigger than the Federal Rules of Civil Procedure, not the AAA rules. The Sixth Circuit held that it has to be part of the arbitration agreement, not the agreement to which they refer. And quite frankly, what you have here, a gateway question, is class arbitration is another species from bilateral arbitration. They're two different things. And for someone to agree to class action arbitration, it has to be something that they agree to in advance. Following up on that question and related to it, can you distinguish Reed Elsevier, or are you asking us to create a circuit split? No, I'm not asking for a circuit split. I can distinguish it. I can point out where it's wrong. How is it different from this case? It's different from this case. The issue posed for this resolution by this panel, how is it different? The issue is the same. It was decided incorrectly because the Sixth Circuit based its decision on its reading of Supplementary Rule 3, which it misquotes. And it basically said that the contract is silent because there was no reference to the arbitrators deciding class arbitrability. And then they quote the last sentence of Supplementary Rule 3 incorrectly, leaving out the words that the arbitrator shall decide. They used the word one. The point of Supplementary Rule 3 is to say clearly, it says it four times in the rule, that the arbitrator shall decide initially the question of class arbitrability, what they call clause construction. Then there's a rest period for someone to go to court if they're not happy with that. The last sentence, which the Sixth Circuit hung its head on, they misread. They misquoted it. And all of that says in making the clause determination, clause construction determination, the arbitrator is not to consider in favor or against the existence of the rule. That has nothing to do with this case. So your point is that Reed is distinguishable because Reed relied on language that deals with the construction of the clause and did not take into account the language that talks about the who decides question. Is that correct? That's correct. And it clearly misstated what the rule says. It's flat out wrong. All right. We'll get you back on rebuttal. Thank you. Thank you. Mr. Donovan. Good morning. Good morning. I want to get to the questions. And first, thank Daniel Donovan for the Chesapeake parties. There is no clear and unmistakable evidence here that the parties agreed to submit class arbitrability to an arbitrator. Well, you drafted a contract. That contract expressly says that all arbitrations will be subject to the AAA rules. It actually doesn't say that, Your Honor. And I'd like to get to, because Mr. Pretter misspoke when he said the Sixth Circuit and the district court there only relied on. Let's focus on your contract. Okay. Sure. So ours says a couple things that are very important. First is, if you have the clause at appendix 1962, it says, in the event of a disagreement between two defined terms, lessor and lessee, that's defined in the lease, lessor being scout as successor, lessee is Chesapeake. So that's who is agreeing to arbitrate and who the disagreements are between. It then says, what are we going to arbitrate? This lease, that's a defined term, performance there under of this lease, and damages caused thereby. So therefore, if there's a dispute between the lessor scout and Chesapeake concerning this lease, we agree to arbitrate such disputes, they've been defined, in accordance with the rules. So Mr. Donovan, in light of Sutter and the point that's been raised by your colleague, we rejected a reading of Stolt-Nielsen that class arbitration is allowed only if the arbitration agreement encants class arbitration, or otherwise expressly provides for some aggregate procedure. Are you arguing that it needs to expressly refer to class arbitration or some aggregate procedure in order to delegate? Yeah, let me take a step back. I think silence is used different times in different cases differently. In Sutter, the parties agreed as a contractual matter that there was never an agreement. That's the way silence was used in that case. The way the Third Circuit, this court, used it in Opelinski was saying the standard there needs to be express contractual intent. And in Opelinski, which Mr. Prater and I frankly just disagree with, they decided two things. If you read it, they said this is the standard, and they applied that standard to a clause that referenced the AAA rules. They could have sent it back to the district court. They didn't. Yeah, but Opelinski, the rules in effect at the time of the clause didn't have supplemental rules. They didn't exist. They didn't, but that's interesting, Your Honor, because what actually then happened was in the briefing, Mr. Prater said this never came up. It came up on rehearing, right? No. This is actually the appellee's brief, page 40, to the Third Circuit. They talk about this temporal issue because they actually tried to flip it the other way on half, saying the half defendants actually knew when they initiated litigation that the supplemental rules would apply. This is at page 40, and they refer to the AAA rules and the supplementary rules. But the supplemental rules weren't in effect at that time, and the court did not at least explicitly address either 7A or the supplemental rules. I agree with that. That was on rehearing. But Reid-El-Selvier did, and actually the district court did as well in that case, and the district court there adopted the argument that I'm making to you, which is you have to read the clauses written. Mr. Prater would like to change the clause. The clauses written limits, which the Supreme Court said we're allowed to do, to who we are going to arbitrate with. Tell us how this answers the who decides question. I'm sorry, Your Honor. How does this decide that who decides that issue of whether it's limited to the two that you say or for a class? Doesn't the incorporation, and it says by arbitration in accordance with the rules of the AAA, why doesn't that answer the who decides question? Sure. So let's start with the plain language of the lease I come back to, which is it doesn't say incorporate all the rules. It defines if we have such a dispute between a lessor and a lessee regarding this lease, we will then use the AAA rules. And I come back to Judge Krause's hypo because this came up under Judge Keeley's decision. Considering Chesapeake's lease, northern district of West Virginia this year, she actually said that would flip the presumption. Mr. Prater actually said, and I wrote this down, he said it would have to say bilateral. But that's flipping the presumption. The Supreme Court says he needs to show express contractual intent that we did agree. And no one here believes that Chesapeake, first of all, I believe the plain language, but that Chesapeake put this arbitration clause in with the intent that there would be class-wide arbitration and some arbitrators would decide that. That's not what this clause provides. But aren't you asking us to disregard traditional rules of incorporation? By reference, if the language here incorporating the AAA rules is not clear and unmistakable, then what is? Sure. So there's two parts there. First of all, I think we have to be careful with saying incorporating. What we did here, which is different than some commercial contracts where we might say we're going to incorporate our terms and conditions. This very specifically defines, and it makes sense, we have a lot of oil and gas leases. We say if we have a dispute between us, we are going to arbitrate regarding this lease and we're going to use the AAA rules. It goes back to yours, what Mr. Prater and Scott would have is that we would then need to exclude. And this is the standard. The AAA says what you should do is have a very simple clause and refer to the AAA. So, therefore, if you think about the result would then be is you would need to have a prohibition on the supplementary rules, which is flipping the presumption. Why wouldn't you just be making the assumption that parties, particularly sophisticated parties, by incorporating the AAA rules by reference, are clearly and unmistakably incorporating their terms, including the delegation of class arbitrability? Sure. Well, first, I don't agree they were incorporated, as Mr. Prater used that term. But number two, if we go and look at the rules, the AAA rules themselves, the bilateral rules, don't refer to the supplementary rules. What happens is this is a daisy chain argument, and that's not clear and unmistakable. Even the Sixth Circuit said on the AAA rules argument, let's assume it's an argument. It's at best ambiguous, and it certainly is not clear and unmistakable that the parties intended that arbitrators would decide other lessors in the class-wide arbitration issue. It doesn't go that far. If you look at the rules, the AAA rules don't actually refer to the supplementary rules. But the supplementary rules refer to the – Exactly.  I'd like an answer, if you could, to Judge House's question about why should this be treated any differently than any other commercial arrangement, where there's a clause in a contract that incorporates by reference some other document? Sure. A couple things. First is, I go back to the plain language, and what they want to do is add other rules and other situations. We limited, which the Supreme Court said we're allowed to do – this is Justice Alito, it's a question of consent – what we would arbitrate and with whom. Number two, if you look at the cases that have construed this, they've said simple reference to the AAA rules to do the AAA is not clear and unmistakable. What case do you have that says that? Because I believe we've already heard many, many courts have already decided incorporation of the AAA rules include a clear and unmistakable agreement by the parties of who decides whether the question is arbitrable, whether it's in a bilateral context or not. Well, that's quite different, though, and I have a lot of cases. We actually have the case here, the district court, but we have other district courts that thoughtfully go through this. This is Judge Keeley, Northern District, and just last month, Judge Stamp of the Northern District of West Virginia and this court – excuse me, the Eastern District of Pennsylvania – Judge Kearney, just last month, ruled on this issue, saying a mere reference to the AAA rules, not a Chesapeake but a different clause, is not enough. So you're saying you're making a representation those district courts have not adopted the standard contractual principle of if you incorporate, it's enough. Because they're treating the AAA rules differently? No, I'm not arguing that they're different. The point is they're construing the actual contractual language. I think the leap that Scout is making is arguing that this is fully incorporated, and clearly and unmistakably this issue that who decides is incorporated in this contract. And when you read this language – If this language is not enough, I want to go back because I don't think I got your answer. Oh, I'm sorry. I didn't answer it. I'm sorry. What language is enough? If we have Souter saying you don't need to incant class arbitration or aggregate proceedings, right? Correct. But if you read that care, it doesn't say what you need is an express contractual intent in the order. So you could say including the supplementary rules. Because remember, the burden is on Scout to include it. You could say class. There's one court – this is, I think, one of these Ninth Circuit courts – where the clause actually said we will consolidate other claims. You wouldn't need magic words. You'd just need an intent expressed. It's contractual interpretation. There's no magic kind of Captain Crunch decoder ring. We've got to have these words. But you've got to have contractual express intent in the contract. Go ahead. Go ahead. Judge. How about the language in Souter itself that talked about no civil action concerning any dispute under this lease shall be instituted before any court? How is that language, which we in the Supreme Court, you know, have interpreted, be different than the language that we have here? Well, I don't think they have. Let's remember what Souter was. Souter, with Justice Alito's concurrence, said that the parties there afterwards agreed the arbitrator could rule on it. Okay. So therefore, you had the low FAA standard. And actually, if I go ahead, Martha, Justice Alito disagreed that the arbitrator got it right. Now, the court said we're not deciding that issue because of the low standard. But the language of the agreement there, which seemed to preclude disputes from being decided by a district court, when you look at the language as a whole, it expressly provided that the dispute did not be decided by a district court. In other words, that those disputes, even between those individual parties, would have to be decided by an arbitrator. Right. While the language here is slightly different, aren't we in the same place by having any such dispute between the two parties here? You know, although it's under this lease, any prospective class member with such a lease is in the same position. But no, because I think it's important on Souter. Let's remember all the Third Circuit and the Supreme Court was saying was, is they had to look at, did the arbitrators construe the contract? Once that happens, we're done because therefore there's not bias. That's the real risk. When we step back, why is it the Supreme Court sets this high standard? It's because not only Chesapeake, but absent class members are worried that contractual arbitrators are ruling on these issues that no one would have thought they would have. And frankly, I think fundamental due process doesn't permit it. So I think, Your Honor, I don't think that was the holding of Souter in the way it's being presented here. It basically said that the contractors, arbitrators, which like to arbitrate, found that there was a contractual basis. That's all the Third Circuit and the Supreme Court did. I come back here when we're construing this language under your hyphen. I gave the examples that you would need because I want to come back. The clear and unmistakable standard is quite high, admittedly, and I embrace that. And because of that, I don't think Scout has shown you in the contract. Well, getting back to the Sixth Circuit, though, which you're relying upon. Yes, Your Honor. You have to agree that the Sixth really didn't offer any reasoning for its decision as such in the analysis. In fact, it didn't even mention incorporation or supplemental rule three. I don't think it was even mentioned in the opinion. Well, Your Honor. And you want us to rely on Sixth Circuit law. And, of course, if we go the other way, it could be a circuit split here. It would be. So how do you rely on the Sixth Circuit when there was no reasoning, no supplemental rule three in that case? Sure. I think, as Your Honors would know probably better than anyone, when you write an opinion, they're simply expressing their idea. There was an affirmance of the district court, and they gave one reason. But their lead reason was, the lead reason not to determine that there was clear and unmistakable evidence, is that the contract was silent as to class arbitration. They then do cite rule three. But the district court, if you read below, and this is the Westlaw site at Star 10, they talk about what we were just talking about, which is there the court said that there was this order instead of this lease. And they said that limited what it was. And because of that, the AAA supplementary rules can't apply because the plain language, as they drafted, the parties are allowed to draft what they want to arbitrate. Because of that, those rules never apply. And, Your Honors, I did read, and I would submit, that the briefing before that court addressed all the reasons I'm arguing. I agree that the Sixth Circuit opinion picks up one, but they also say other reasons. And that's why, because they say, look, nobody, there's nothing in this agreement, contractual express intent to show. That was the whole thing. The Sixth Circuit, in the second part of its opinion, dealing with the construction of the arbitration clause and the question of class arbitrability itself, discusses there the incorporation of the AAA rules. But you agree in the earlier part of the decision as to the delegation question, there's not, in that discussion, an explicit reference to incorporation. There isn't, but that was argued below. I mean, it's not in their opinion, but if you read the briefs, I mean, it's like anything. There's lots of arguments being made. But their point was they kind of canvassed the Supreme Court law and said, look, it's pretty clear where the Supreme Court is heading, and we think that's the right decision. And they explain why. I agree they didn't do an analysis. But I want to take one step back to the Scouts' argument, is that somehow the Opelinski panel of this court wasn't aware of this AAA rules argument. The Opelinski panel, written by Judge Ambrose, relied heavily on Reid-El-Salvier for the standard, but they fully read it. I think it is beyond the straight-faced test that that panel read the Reid-El-Salvier decision but stopped once they set the standard, didn't read the rest of it, and wasn't aware of this AAA rules argument. They were fully aware of it. They're, just like good lawyers do on both sides, they made other arguments that they were focused on. Opelinski argued it was because of the breadth of the language, any controversy. That was their lead argument. I'd like to talk about your contract, though. Okay, please. All right. In your contract, it focuses on the first clause. I've heard you on that. Okay. But now I want to talk about the resolution of such a dispute shall be determined, this is the part, by arbitration in accordance with the rules of the American Arbitration Association. Yes, Your Honor. That's the language your client drafted and included this. Is it your position that this does not incorporate the AAA rules? And if that is your position, then I would take it you are not incorporating either for bilateral arbitration. Correct? What? Because you can't have it both ways. You can't incorporate for some and not others. Well, it's not incorporated is my position. Okay, so you're saying in accordance with the rules in the AAA is not incorporation language. It is not incorporation the way it's used in the cases. I agree. No, I'm asking you. Oh, no, no, no, no. That's my position. Yes, Your Honor. And can I explain why briefly? Is the point? I'm sorry. Are you answering that as to class arbitration or are you suggesting contrary to every case that's addressed the issue now that the question of arbitrability itself in bilateral contracts is not provided by an express reference to the AAA rules? As to class, as to class. Only as to class. As to class. And you're saying that because of the language that precedes it. Right. Because the parties are allowed to limit. So we have agreed that we would use the AAA rules for disputes between the lessor and the lessee. Okay. You have to use the plain language here. So you're using that to modify the in accordance with. And that is why you're saying this is not an incorporation case. Am I correct? That is correct, Your Honor. And it's the all such disputes. Thank you, Your Honor. Okay. Thank you. All right. We'll hear you on rebuttal. Thank you. First, I'll start, if I may, with the actual least word language. It says will be determined in accordance with the rules of the American Arbitration Association. There is no word of limitation. Under Pennsylvania law, which is what applies here, the plain meaning is that means all of the rules. Commercial Rule 1 says, and it's clear that Mr. Donovan is trying to say that these rules are just referenced to. They're not really part of the contract. They are absolutely part of the contract. Commercial Rule 1 says the parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the AAA. It couldn't be any clearer in the rules. Also, Pennsylvania law clearly says that if you refer to a document such as this, it's in existence at the time of the agreement. It is part of the agreement. Where the language that comes before that reference talks about this lessor and lessee and specifies a type of controversy, that is disputes concerning this lease and such disputes, how does a reference to resolving such disputes in accordance with the AAA rules convert a consent to let the arbitrator decide the arbitrability of claims between these parties concerning this particular lease into consent for the arbitrator to decide claims between other parties concerning other leases? Well, it's a two-part answer, and forgive me if I've already said this, but there's a clear distinction in the issue before the Court as to whether there's an agreement on class arbitrability and who decides that. The question here is who decides. Many of his arguments can be presented to the arbitration panel that we didn't agree on class arbitration, but that's not the question. The question is who decides. They chose the AAA rules. They said the rules, we say that means all the rules, and Supplementary Rule 1, that was adopted in 2003, says that these rules amend and supplement all other rules of the American Arbitration Association. They, as a drafter of the agreement, are charged with knowledge if that's what it said. So I think if you look at Rule 1 of the Supplementary Rules, it makes it very clear that the Supplementary Rules are also part of this lease. Do you agree under the remarkably high Opalinsky standard, as Judge Cowen was pointing out, that talks about clear and unmistakable language, a strong presumption, a burden that's onerous, express contractual language unambiguously delegating the question to the arbitrator, that you need to persuade us that there is no reasonable reading of this contract that limits application of the procedures in the AAA rules to these individual parties in this individual lease? I agree that we have to show it's clear and unmistakable, and I'm relying upon the breadth of the arbitration clause itself. I'm relying on the incorporation of all of the AAA rules, which clearly are part of this lease, as if they had been stapled to the two-page form contract. The fact that they wrote it at a time when they knew what the Supplementary Rules said, and fairness. It's not fair to pick and choose which rules you want to abide by. Here there's an agreement to abide by a procedure. Jurisdiction was given to the arbitrators under the rules to decide this question of class arbitrability, subject to court review. But is it your position that there is no reasonable reading of the language in this lease that it is only bilateral disputes that were intended to be delegated to the arbitrator under the AAA rules? That is, that this lease was contemplating a bilateral dispute subject to the procedures that are outlined in the AAA rules for arbitration? I would say it's not ambiguous. I think it's clear and unmistakable. That's an unreasonable reading of this? I think it's absolutely unreasonable on the question of who decides. Well, just picking up on Judge Prowse's question to you, don't you agree that the commercial rules generally address procedural matters like filing requirements? You know, we've all been in arbitration, myself and everyone else, and overwhelmingly you're dealing with procedural matters dealing with the handling of the arbitration. You know, time limits of discovery, everything, all the 50-60 pages go into all that stuff that the parties typically expect an arbitrator to resolve unquestionably. How does that question of class arbitrarily, which Opolinsky held constitutes a gateway question, presumably for courts rather than arbitrators to decide, how does that reference sweep in agreement to arbitrate class action as well? When you're dealing now with a gateway question, you're dealing with something completely different than bilateral arbitration. Well, there are gateway questions. Some are exclusively for the court to decide and some are for the arbitrators. So the fact that it's a gateway question is the beginning of the analysis. Well, it's a gateway question which you have to prove by an unbelievably high standard of proof, and you're referring to the AAA rules, and I think you would not argue that 99% of those rules that we've all lived with deal with procedural matters, which are everyday questions that a trial judge or an arbitrator deals with. Well, I would agree that many of those rules do that, but Commercial Rule 7 says that the arbitrator shall have the power to rule on his own jurisdiction, including arbitrability of any claim. That's what it says. If this is a question of arbitrability, which the Third Circuit has said, it's one of very few that said that. The Supreme Court has not said that, but I accept it for purposes of this case. Then there is no rule that says that this question of arbitrability is subject to some different standard of proof than any other. So from your point of view, we wouldn't even have to consider the supplemental rules? You could just look at Commercial Rule 7? I think you could just look at Commercial Rule 7, Commercial Rule 8, and Commercial Rule 1. But those rules were in effect at the time of Opalinsky. Are you suggesting that that was not something that Judge Ambrose and the panel took into account in drafting Opalinsky and referring approvingly to Reed Elsevier? I think, Your Honor, that the vast bulk of the opinion in Opalinsky, in fact the entire bulk of the Opalinsky opinion, is resolving the question of is class arbitration a question of arbitrability. And then it goes on and says that in the absence of the type of proof we've been talking about, that's an issue to be cited by the court. But it was not presented with the rules. It didn't consider the rules. It didn't rule on the rules. It just stopped short and it left it for a case like this. It didn't rule on the clause because the parties had agreed that it was silent. Silent in the sense that it didn't have any provision for it. And again, I point to the fact of how the case came up. The plaintiffs in Opalinsky were stuck with the fact that they had argued at the beginning that class arbitration was prohibited. They couldn't change horses. They put all of their marbles on one spot. And that was on the question of arbitrability. They lost. And then on a petition for rehearing, they brought up the argument that we're bringing up, which the court didn't rule on. So I'm saying that Opalinsky doesn't answer the question. It sets the standard of proof, but it didn't answer the question that's now before the court. Isn't it the case that the question of who decides is subject to an even higher threshold in the standard that's articulated in Opalinsky than the question of arbitrability on a class-wide basis? I don't believe the court – I don't think that is a higher standard. It's just basically saying who has the burden of proof. I think we've carried the burden of proof. Stolt-Nielsen and Sutter provide that once there has been a delegation to the arbitrator to decide, vacating that is quite a feat. The standard is a very, very high one to vacate the arbitrator's decision once the parties have delegated the decision-making to the arbitrator, right? That's correct. So in light of that, don't we need to be especially cautious, as reflected in the standard in Opalinsky, for whether we have explicit and unambiguous delegation in the contract language? Well, I think that the fact of the Section 10 standard is a fact. But I'm saying that that's what they chose. That's what the clause says. That's what the rules said. They chose to say these things. They chose those standards. And now they don't, for some reason, want to abide by them. I don't think you can pick and choose. When you say they chose, that's the answer to the question. The question is, did they choose? I'm not saying that they chose. The question before the court is, did they choose? And did you choose? And it's sort of an interesting exercise for me as a practical matter to think that everything you buy, everything you sell, now all the Fortune 500 companies, everyone requires you to sign an arbitration agreement that these large corporations would open themselves up to arbitration to be signed by an arbitrator. It sort of strains the imagination beyond what could possibly be thought of. Well, from a practical standpoint, what contracts like Your Honor is referring to do is have express waivers. They express the waive class arbitration. They waive jury trial. And that's the way you would draft a contract. I've drafted contracts. I'm sure Your Honor has drafted many, many more than I have. And you certainly construed many, many more than I have. But as a drafter of contracts, if you want to exclude the arbitrators from deciding, then you put that in the contract. You don't use general language like this, words without any limitation, incorporating all the rules. Why do you have to exclude it when it's excluded automatically unless you can show that there's a tremendous presumption that's been overcome by the very language of the leasing agreement? Why do you have to exclude it? You're asking someone to do something that's already a fait accompli. Well, I would not agree it's a fait accompli. The question is someone has to decide it. Well, you're flipping it on its head now. You're saying that if they didn't want class arbitration, they should have excluded from the arbitration agreement. But that's not the law. The law in the Third Circuit, at least, and the Sixth Circuit, is that you don't have class arbitration unless you have met an onerous presumption against you. And how the whole question for the panel, of course, is whether or not you've overcome that presumption. Well, I would only politely disagree in one respect, and that is that, again, and I know I may sound like a broken record, but the question is who decides not clause construction? And Judge Brand, for some reason, and I think this motivated in part his decision, he makes a factual statement at the beginning of the opinion that the panel of three arbitrators had decided clause construction. They hadn't. They'd only decided who decides. You know, it's interesting because I've observed something very similar to what you're speaking of, and a lot of the evidence that deals with clause construction also deals with the very question of who decides. I mean, the evidence is to different issues, but it's the same evidence used on both issues. Don't you agree? Well, the only evidence that Judge Brand considered was, in essence, the Sixth Circuit. He didn't deal with the evidence. He didn't construe the contract. He didn't say one word about the AAA rules, not one word. And I think in that respect, that alone justifies reversal because he didn't look at the issue that was before him and decide it under the clear, unmistakable premise of all arbitration litigation, and that is that the contract is king. You have to look at the contract and construe it. He didn't do it. Your position is that there only needs to be an exclusion, an express carve-out of the arbitrator from deciding where the parties have expressly referenced and incorporated the AAA rules, right? There are many ways to draft a contract. What Judge Alito said in Rent-A-Center was parties can agree to arbitrate questions of arbitrability if that's what the contract says. That's what this contract says. Now, if you wanted to write something different, as a drafter, you would say either you wouldn't refer to the AAA rules at all or you'd say we're only consenting to the following rules, as Judge Collin points out, the administrative portions of the rules. There's all sorts of ways to write things. So what I'm saying is each contract has to be looked at as to what it says. Judge Brand basically over-read Opolinsky forgot about construing the contract under state law, didn't look at the AAA rules, and relied on the Sixth Circuit, which misconstrued one supplementary rule, one sentence, which in fact proves the opposite of what Judge Brand said it did. Okay. Well, thank you very much. Counsel, thank you both for your fine arguments and your briefing. Thank you, Your Honor. We'll take this under advisement.